UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF
ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| Clark & Leland Condominium, L.L.C., an Illinois Limited Liability Corporation; Hueng K. Baek, Individually and as Manager of Clark & Leland Condominium, L.L.C., and Hyun Baek-Lee, | ) ) ) ) ) ) ) | No. 14 C 3928 |
| Plaintiffs, | ) ) ) | Judge Thomas M. Durkin |
| v. | ) ) | |
| Northside Community Bank, an Illinois Chartered Bank, William Kivit, Individually and as Vice-President for Northside Community Bank; Patricia A. Clausen, Individually and as President for Northside Community Bank; Belinda M. Baier; and Maria Spencer | ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Heung Baek ("Baek") and Hyun Baek-Lee ("Baek-Lee") (collectively, the "Baeks") and their company, Clark and Leland Condominium, LLC ("C&L"), (collectively, "Plaintiffs") bring this action against Defendants Patricia Clausen, Maria Spencer, Belinda Baier, William Kivit, and Northside Community Bank ("NSCB") (collectively, "Defendants"). Plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), *et seq*. Defendants moved to dismiss Plaintiffs' complaint or in the alternative to stay pursuant to the *Colorado River* doctrine. R. 5. Defendants subsequently amended their motion to dismiss—superceding their previous

1

motion—to rely on an alternative ground for dismissal under Federal Rule of Civil Procedure 12(b)(6) based on *res judicata*. R. 13. For the following reasons, Defendants' motion to dismiss is granted.

## Legal Standard

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

As a preliminary matter, the Court notes that *res judicata* is an affirmative defense, pursuant to which dismissal under Rule 12(b)(6) is generally not appropriate.

2

*See U. S. Gypsum Co. v. Ind. Gas Co.,* 350 F.3d 623, 626 (7th Cir. 2003); Fed. R. Civ. P. 8(c). Still, a plaintiff "may plead [him]self out of court by alleging (and thus admitting) the ingredients of a defense." *U. S. Gypsum,* 350 F.3d at 626. Thus, the doctrine of *res judicata* may properly be raised as a basis to dismiss a complaint pursuant to Rule 12(b)(6). *Anderson v. Guaranteed Rate, Inc.*, No. 13 C 431, 2013 WL 2319138, at *3 (N.D. Ill. May 28, 2013).

Because such a defense often requires the court to consider matters outside the complaint, a motion raising it ordinarily must be treated as one for summary judgment. *Arthur Anderson LLP v. Fed. Ins. Co.,* No. 6 C 1824, 2007 WL 844632, at *1 (N.D. Ill. Mar. 16, 2007) (citing *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997)). However, the Seventh Circuit has held that "the district court may also take judicial notice of matters of public record without converting a 12(b)(6) motion into a motion for summary judgment." *Henson c. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991)). Thus, "[w]hen a defendant raises *res judicata* as a defense and it is clear from the complaint's face, and matters of which the district court may take judicial notice[,] that the plaintiff's claims are barred as a matter of law, dismissal under Rule 12(b)(6) is proper." *Arthur Anderson*, 2007 WL 844632, at *7 (quoting *Wilson v. Bob Watson Chevrolet, Inc.*, No. 03 C 5535, 2004 WL 432493, at *2 (N.D. Ill. Mar. 02, 2004)).

3

## Background

### I. The Loans

The Baeks are spouses who came to the United States from Korea in 1999.[1] R. 1 ¶ 11. Baek was interested in developing residential and commercial properties. In 2005, through his limited liability company, C&L, Baek purchased property at 4651 N. Greenview Avenue in Chicago for commercial and residential development (the "Property"). *Id.* ¶ 12. Baek was the sole member of C&L and acted as its manager. *Id.* ¶¶ 1, 12. The purchase was financed by Labe Bank and Baek worked with loan officer Bill Frank on the transaction. *Id.* ¶¶ 12, 13.

In 2006, Frank left Labe for NSCB. *Id.* ¶ 13. Frank told Baek that he "needed to produce" for NSCB. *Id.* Plaintiffs allege Frank promised them that NSCB could offer them construction loans at higher amounts with a lower interest rate. *Id.* Subsequently, in July 2006, Baek entered into a construction loan agreement with NSCB for $11,752,336. *Id.*

As part of the loan agreement with NSCB, C&L executed a Construction Loan Agreement, Construction Mortgage, and a Promissory Note and Baek executed a commercial guaranty (the "Guaranty"). *Id.* ¶ 14. At the closing, NSCB presented a guaranty document that required signatures from both Baeks. *Id.* Baek's counsel objected to the requirement that Baek-Lee sign because Baek-Lee had not agreed to be a guarantor. *Id.* As a result, Baek-Lee did not sign the Guaranty at closing. *Id.* ¶ 14. Baek-Lee does not recall ever signing the Guaranty *Id.*

---

[1] The facts in this section are drawn from the complaint. As noted, the Court accepts them as true for the purposes of this motion. *Mann*, 707 F.3d at 877.

In July 2007, NSCB claimed that the loan was "out of balance" by the amount of monthly interest, approximately $49,000 per month. *Id.* ¶ 17. Subsequently, NSCB demanded that Baek deposit more money in the construction loan account which he did for two months. *Id.* NSCB then required Baek to provide the title to his home as additional collateral instead of the $49,000 monthly payment. *Id.* ¶ 18. Although Baek provided the title, NSCB refused to disburse funds to C&L's contractors. *Id.* Then, NSCB required Baek to deposit $700,000 as additional collateral in return for which it would release the lien on his house. *Id.* Baek made the payment, however NSCB did not release the lien. *Id.* Defendant William Kivit, NSCB vice-president and Frank's boss, told Baek that he would extend the maturity date of the current construction loan and convert it to a long-term mortgage loan, but he did not. *Id.* NSCB resumed disbursing funds to Baek in February 2008, but did not convert the loan into a long-term mortgage or release the lien on Baek's house. *Id.* ¶ 19.

NSCB, C&L, and Baek subsequently entered into three loan modification agreements dated July 14, 2008; January 14, 2009; and December 14, 2009. *Id.* ¶ 15. Baek-Lee's signature appears on the loan modification agreements, but she does not remember signing them. *Id.* Baek-Lee asserts that she did not sign the third modification agreement and that her notarized signature was forged because she was not in the United States on December 14, 2009, the day it was signed. *Id.* Baek-Lee's passport shows that she was in South Korea that day. *Id.* ¶ 16. Plaintiffs allege that the notary notarized Baek and Baek-Lee's signatures outside their presence. *Id.*

The December 14, 2009 modification agreement authorized C&L to manage the operating account associated with the loan, however Kivit would not allow C&L or

Baek to use the operating account until June 2010 when Baek complained to NSCB and Kivit that they were in violation of the terms of the third modification agreement. *Id.* ¶¶ 20, 21. NSCB also withdrew funds from the operating account as its attorney's fees. *Id.* ¶ 22.

When the construction on the Property was completed in January 2009, not all of the units were sold. *Id.* ¶ 25. Kivit proposed that Baek rent out all of the residential and commercial units at the Property, and told Baek that in return, NSCB would convert the construction loan to a long-term mortgage loan. *Id.* By May 2009, all of the residential and commercial units were rented out. *Id.* The tenants' security deposit on their leases were given to NSCB to be put in an escrow account. *Id.* C&L and Baek allege that NSCB had used the tenants' security deposits for payment of NSCB's loan interest although there were enough funds in the operating account to pay the interest. *Id.*

NSCB demanded that Baek and Baek-Lee provide it with their 2009 income tax returns. *Id.* ¶ 27. However, NSCB was in sole possession of the bank statements related to the operating account, which Baek and Baek-Lee evidently needed in order to prepare their income tax returns. *Id.* Baek asked Kivit to provide him with the bank statements and a copy of the checks that Kivit issued. *Id.* Kivit told Baek that NSCB could not find the documents because Frank, who was in charge of C&L and Baek's accounts, had left NSCB. *Id.*

On October 15, 2010, NSCB issued a default letter claiming that Plaintiffs were in default under the loan by failing to maintain an operating account with NSCB, failing to reimburse NSCB's attorney's fees, and failing to furnish their 2009 federal

6

and state income tax returns. *Id.* ¶ 28. When C&L received the default letter from NSCB, Baek put a stop payment on his October 2010 payment to NSCB. *Id.* ¶ 29.

## II. Foreclosure Action

On October 26, 2010, NSCB filed a foreclosure action against C&L in the Circuit Court of Cook County, Case No. 10 CH 46613 (the "Foreclosure Action"). *Id.* ¶ 30. On February 7, 2012, the Circuit Court entered a judgment of foreclosure and sale of the property at issue. R. 5-1 at 1. On October 9, 2012, the Property was sold and a deficiency judgment was entered against C&L for $2,863,489.23. *Id.* at 3-5.

## III. Guaranty Action

On October 29, 2010, a few days after filing the foreclosure action, NSCB filed a complaint against the Baeks as guarantors on the loan in Circuit Court, Case No. 2010 L 51681 (the "Guaranty Action"). R. 1 ¶ 30. On July 6, 2011, NSCB filed an amended complaint in the Guaranty Action. *Id.* On June 12, 2012, the Baeks filed affirmative defenses and a counterclaim to the complaint against them in the Guaranty Action. R. 21-21. Following a bankruptcy filing by the Baeks, the Guaranty Action was renumbered as 2014 L 50452 (Case 50452). R. 5-3.

## IV. Parallel Action

While the Guaranty Action was still pending, on June 29, 2012, Plaintiffs and Soo Corporation D/B/A Blue Ocean Contemporary Sushi[2], filed a complaint against NSCB, and Kivit, under Case No. 12 L 7369 (the "Parallel Action"). R. 5-6 at 1-12. In

---

[2] In the Parallel Action, Soo Corp. is described as an Illinois Corporation headquartered in Chicago doing business as Blue Ocean Contemporary Sushi restaurant. R. 5-6 ¶ 4. In that complaint, Baek is described as an "owner-investor" in Soo Corp., but his position is not further discussed.

7

their original complaint, the Plaintiffs and Soo Corp. asserted seven claims against NSCB and Kivit related to the construction loan: (1) Breach of Contract – Bad Faith; (2) Breach of Fiduciary Duty; (3) Constructive Trust; (4) Fraud; (5) Accounting; (6) Contract Implied In Law/Unjust Enrichment; and (7) Emotional Distress (brought by Baek-Lee). *Id.* On August 23, 2012, the Circuit Court consolidated the Parallel Action with NSCB's Guaranty Action. R. 5-5.

On November 28, 2012, the Plaintiffs and Soo Corp. filed a motion to amend their June 29, 2012 complaint. R. 5-7. The proposed amended complaint contained, among other new claims, a RICO claim at Count XI. *Id.* On October 13 and October 23, 2012, NSCB filed motions to strike and dismiss the Baeks' affirmative defenses and counterclaims in the Guaranty Action and to dismiss the Baeks and Soo Corp.'s complaint in the Parallel Action. R. 21-22, 23 & 24. In NSCB's motion to strike and dismiss the Baeks' affirmative defenses, NSCB argued that sixteen of the Baeks' defenses, including unjust enrichment, fraud in the inception, and failure to perform, were premised on a "legally flawed and misleading 'Partnership-in-Fact'" theory. R. 21-22 at 3. NSCB also argued that many of the Baeks' other affirmative defenses were legally insufficient and failed to state claims. *Id.* NSCB argued that even if the affirmative defenses were sufficiently stated, they would belong to C&L, not the Baeks, who did not have standing. *Id.* at 10-11. NSCB contended that subsequently, any defenses in favor of C&L were barred by res judicata and collateral estoppel based on the foreclosure judgment. *Id.* at 11-13. Finally, NSCB argued that even if the affirmative defenses were sufficiently stated, the Guaranty and loan modifications contained enforceable clauses waiving defenses that barred the Baeks' affirmative

8

defenses. *Id.* at 13-14.

In its motion to strike and dismiss the Baeks' counterclaims, NSCB argued that many of the Baeks' counterclaims—including "wrongful refusal to extend credit," breach of contract based on an alleged partnership-in-fact, fraud, breach of fiduciary duty—were insufficient as a matter of law. R. 21-23. NSCB also made the same standing, *res judicata*, collateral estoppel, and waiver arguments against the Baeks' counterclaims as it did against the Baeks' affirmative defenses. *Id.*

In its motion to dismiss the Baeks' complaint, NSCB argued that the Baeks and Soo Corp. failed to plead facts supporting claims for breach of contract, breach of fiduciary duty, constructive trust, fraud, accounting, unjust enrichment, and emotional distress. R. 21-24. NSCB also argued that even if the claims were sufficiently stated, C&L—not the Baeks—would have standing to bring them. *Id.* NSCB also made the same *res judicata*, and collateral estoppel, and waiver arguments against the claims in the complaint as it did against the Baeks' affirmative defenses and counterclaims. *Id.*

On May 30, 2013, having reviewed the pleadings and having heard the arguments of counsel, the Circuit Court granted NSCB's motion to strike and dismiss the Baeks' affirmative defenses, counterclaims, and Counts I-VII of Plaintiffs' and Soo Corp.'s complaint with prejudice. R. 5-2. The Circuit Court also gave the Plaintiffs and Soo Corp. leave to replead Counts VIII through XI (their proposed amendments to the Parallel Action complaint) within 28 days. *Id.* NSCB filed a motion for summary judgment on the Guaranty Action on August 19, 2013. R. 21-38.

On April 24, 2014, nearly a year after the Circuit Court dismissed their

9

complaint, the Baeks and Soo Corp. filed a motion to reconsider the May 30, 2013 ruling and to file an amended complaint. R. 5-10. The proposed amended complaint included an identical RICO claim to the one at issue before this Court, but different from the RICO claim included in the November 28, 2012 proposed amended complaint. R. 5-10 at 46-51. On September 11, 2014, the Circuit Court, having reviewed the pleadings and having heard arguments of counsel, denied the Baeks and Soo Corp.'s motion to reconsider and for leave to file an amended complaint. R. 13-1. The Circuit Court also granted NSCB's motion for summary judgment in the Guaranty Action, rendering judgment in favor of NSCB against the individual plaintiffs jointly and severally in the amount of $2,359,743.55. *Id*.

On October 10, 2014, the Baeks and Soo Corp. filed a post-judgment motion to vacate the Circuit Court's summary judgment ruling and for leave to file amended defenses and counterclaims. R. 21-50. They filed a separate motion for leave to file the amended complaint. R. 21-49. On October 30, 2014, the Circuit Court denied those motions. R. 13-2.

## V.    Federal Case

On May 28, 2014, Plaintiffs filed the instant single count RICO action in this Court. R. 1. On July 31, 2014, Defendants moved to dismiss the case or in the alternative to stay pursuant to the *Colorado River* doctrine. R. 5. After further rulings in the state court cases, on November 2, 2014, Defendants moved to amend their motion to dismiss in this case to assert *res judicata* as the ground for dismissal. R. 13. The parties appeared before the Court on February 12, 2015 and submitted supplemental briefing regarding the state court proceedings. R. 20, 21 & 22. The Court

asked for supplemental filings on details of the Circuit Court's September 11, 2014 order. R. 20. Defendants filed a supplemental brief and Plaintiffs declined to do so. R. 23.

## Analysis

Since an Illinois state court rendered the initial judgment, this Court must apply Illinois preclusion law to determine whether *res judicata* bars Plaintiffs' claims. *Whitaker v. Ameritech Corp.*, 129 F.3d 952, 955-56 (7th Cir. 1997) (citing 28 U.S.C. § 1738). "In Illinois, *res judicata* extends to all questions actually decided in a previous action as well as to all grounds of recovery and defenses which might have been presented in the prior litigation." *Id.* (citing *LaSalle Nat'l Bank v. Cnty Bd. of Sch. Trustees*, 337 N.E.2d 19, 22 (1975)). *Res judicata* bars a subsequent action if three requirements are met: "(1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an identity of cause of action; and (3) there is an identity of parties or their privies." *Whitaker*, 129 F.3d at 956 (quoting *Downing v. Chi. Transit Auth.*, 642 N.E.2d 456, 458 (1994)).

Defendants contend that based on the disposition of the state court proceedings, Plaintiffs' complaint should be dismissed pursuant to the doctrine of *res judicata*. R. 13. Defendants rely on two alternative but related arguments. First, they argue that Plaintiffs already asserted the RICO claim before the Circuit Court by seeking leave to file an amended complaint containing the RICO claim and failing to amend within the time permitted by the Circuit Court. *Id.* In a related argument in their supplemental brief, Defendants argue that *res judicata* applies based on the involuntary dismissal of Soo Corp. and Plaintiffs' complaint of Counts I through VII

in the Parallel Action and the Baek's affirmative defenses and counterclaims in the Guaranty Action. R. 23 at 7.

As their second argument, Defendants argue that irrespective of whether the RICO claim was raised in the state court actions, such a claim is still barred by *res judicata* because permitting Plaintiffs' RICO claim would allow them to relitigate matters that should have been raised in defense to the Foreclosure and Guaranty Actions and would nullify the prior state court judgments. R. 17 at 2-3. The Court will address this argument first.

### A. *Res Judicata* Effect of the Parallel Action

#### 1. Final Judgment on the Merits

The Circuit Court's May 30, 2013, order granted NSCB's motion to dismiss Plaintiffs' complaint in the Parallel Action with prejudice. R. 5-2. Illinois Supreme Court Rule 273 provides that "[u]nless the order of dismissal or a statute of this State otherwise specifies, an involuntary dismissal of an action, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join an indispensable party, operates as an adjudication upon the merits." *Hock v. Vill. of Bloomingdale*, 504 Fed. App'x. 516, 517-18 (7th Cir. 2013). The Circuit Court's order does not provide (nor do Plaintiffs claim) that Plaintiffs' complaint was involuntarily dismissed for any of the reasons listed in Rule 273. Thus, the ruling constitutes "a final judgment on the merits."

#### 2. Identity of Parties

Second, the same parties or their privies were involved in the Parallel Action and are involved in the instant action. Plaintiffs in the Parallel Action were C&L, Soo

12

Corp., Baek, and Baek-Lee. R. 5-6; R. 21-37 ¶ A. They filed that claim against NSCB, William Kivit, and unknown John Does. *Id.* C&L, Baek and Baek-Lee are plaintiffs in the instant lawsuit, as well. R. 1 at 1-2. Besides NSCB and Kivit, individual NSCB employees are named as defendants in this case. *Id.* However, "Illinois law clearly establishes that employees, attorneys, and officers of a defendant entity in a prior suit are in privity with the defendant for purposes of res judicata." *Guerriero v. Merit Lincoln Park, LLC*, No. 08 C 2388, 2008 WL 4696070, at *3 (N.D. Ill. Oct. 22, 2008) (citing *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235 n. 6 (7th Cir. 1986)). Since all defendants in this action are current or former employees of NSBC, each individual defendant is in privity with NSBC with respect to the Parallel Action. *See, e.g., Ross Adver., Inc. v. Heartland Bank & Trust Co.*, 969 N.E.2d 966, 976-77 (Ill. App. Ct. 3rd Dist. 2012) (noting the parties named in the complaint were the same as, or in privity with, the parties in prior case and that the addition of an employee as a defendant did not undermine the identity of the parties or otherwise defeat the application of *res judicata*).

### 3. Identity of the Cause of Action

Finally, with respect to the last element of *res judicata*, the "identity of the cause of action," Illinois employs the "transactional" test, which provides that "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts." *Amari Co., Inc. v. Burgess*, 955 F. Supp. 2d 868, 881 (N.D. Ill. 2013) (quoting *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 893 (1998)). This is a broad standard: two causes of action with overlapping facts will pass the transaction test "regardless of whether

they assert different theories of relief" and "even if there is not a substantial overlap of evidence." *River Park,* 703 N.E.2d at 893. "The doctrine prohibits not only those matters which were actually litigated and resolved in the prior suit, but also any matter *which might have been raised* in that suit to defeat or sustain the claim or demand." *Kosydor v. Am. Express Centurion Services Corp.*, 979 N.E.2d 123, 128 (Ill. App. Ct. 5th Dist. 2012) (quoting *Rein v. Noyes & Co.*, 665 N.E.2d 1199, 1205 (1996) (emphasis added)).

Applying this test and comparing Plaintiffs' claims before this Court with their claims in Counts I-VII as pled and dismissed in the Parallel Action, it is clear that the RICO claims arise out of the same group of operative facts as the claims in the Parallel Action. R. 5-6; R. 1; R. 5-2. Both arise out of Plaintiffs' alleged breach of the loan agreement. Plaintiffs' state court complaint charged that the construction loan and its modifications were arbitrary and ambiguous with respect to provisions about events of default and fees, giving NSCB unilateral control over those issues. R. 5-6 at 4. Plaintiffs claimed that NSCB failed to provide them with statements, demanded they pay unwarranted attorneys' fees, and caused them to transfer the C&L operating account to another bank, all of which NSCB declared as defaults of the loan. *Id.* at 1–12. Like their state law claims, Plaintiffs' federal RICO predicate claims pertain to NSCB's alleged improper declaration of Plaintiffs' default on the loan, improper determination that the loan was out of balance, unwarranted deduction of attorneys' fees from deposit accounts related to the loan, fraud in the execution of the loan documents and notarizations, and claims of misconduct relating to the enforceability of the underlying note and guaranties. R. 1. ¶¶ 27, 28, 51, 53, 55, 58,

14

60. While the claims asserted are different, these predicate RICO acts alleged in Plaintiffs' instant complaint mirror the fraudulent conduct that Plaintiffs alleged as part of their claims for breach of contract and fiduciary duty, fraud, unjust enrichment, and emotional distress in their state court complaint in Counts I, II, IV, VI-VII. *See* R. 5-6 at 1–13; *see also Amari Co., Inc.*, 955 F. Supp. 2d at 881 (noting that the predicate RICO acts in the federal claim mirrored the fraudulent conduct that defendants had alleged as affirmative defenses to the state court contract claims) (citations omitted). The two suits are based on different legal theories—the first one on state law and the second on a federal (RICO) statute—but both arise out of the same facts, namely the Defendants' conduct surrounding Plaintiffs' alleged default on the loan. *See River Park*, 703 N.E.2d at 894 ("Perhaps the most telling indication of identity of cause of action in this case, however, is the parallels between the factual allegations of plaintiffs' state complaint and their federal complaint."). The transactional analysis reveals an identity of the causes of action for *res judicata* purposes. As a result, the claims are barred. *See, e.g., Muhammad v. Oliver,* 547 F.3d 874, 876-77 (7th Cir. 2008) (noting that, where two suits were "based on different legal theories—the first on state contract law, the second on a federal civil rights statute—but both arose out of the same facts . . . namely conduct by the defendants . . . the judgment ending the suit, whether or not it is with prejudice, will generally bar bringing a new suit that arises from the same facts as the old one.").

Plaintiffs do not dispute that they could have raised their current RICO arguments in the state court proceeding for the Parallel Action. State courts possess concurrent jurisdiction over RICO claims. *Carr v. Tillery,* 591 F.3d 909, 914 (7th Cir.

2010) ("state courts have concurrent jurisdiction with federal courts to enforce RICO"). Indeed, at some point Plaintiffs clearly thought these claims relevant to their complaint in the Parallel Action since they sought to amend the complaint with their state RICO claim, but failed to do so prior to the Circuit Court's deadline to refile. R. 5-2; R. 5-10. The bar of *res judicata* extends to what was actually decided in the first suit, along with those matters that could have been litigated in that proceeding. *City of Chicago v. Saint John's United Church of Christ*, 935 N.E.2d 1158, 1166 (Ill. App. Ct. 2nd Dist. 2010); *id.* at 1167 ("Although the state constitutional claims were not raised in the federal case, they could have been."). Thus, the Court finds that the Circuit Court's dismissal with prejudice of Plaintiffs' complaint in the Parallel Action bars their instant RICO claim based on *res judicata*.

### B. *Res Judicata* Effect of the Guaranty Action

#### 1. Final Judgment on the Merits

The Court has reviewed the briefing in the Guaranty Action. While there is no written ruling or oral transcript of the Circuit Court's grant of summary judgment in that action, Plaintiffs do not argue (and there is no suggestion identified in any of the Circuit Court briefing provided) that the decision was anything other than a final judgment on the merits, *i.e.,* one that is decided on statute of limitations grounds. R. 21-38, 44, 45, 48 & 49. The Court thus considers the Circuit Court's summary judgment ruling to be a final judgment on the merits.

#### 2. Identity of the Parties

The Guaranty Action involved the same parties or their privies as the instant action. NSCB filed the Guaranty Action against Baek and Baek-Lee as defendants. R.

16

21-20. As noted, NSCB's employees (additional defendants in the instant action) are in privity with NSCB, which was state court plaintiff in the Guaranty Action. *See Guerriero*, 2008 WL 4696070, at *3. Likewise, C&L (Baek's LLC), the plaintiff in the instant action, is in privity with Baek and Baek-Lee as state court defendants. *See id.* Baek's status as the manager and sole member of C&L further supports a finding for C&L's privity. *See, e.g., Kramer v. Stelter*, 588 F. Supp. 2d 862, 867 (N.D. Ill. 2008) ("In light of [plaintiff's] self-created total control over both [LLCs] . . . it would represent the height of artificiality . . . to view the [LLC's] as anything other than in privity with [plaintiff] as an individual.") (citations omitted).

### 3. Identity of the Cause of Action

As noted, under the transactional anaylsis, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *Amari Co., Inc.*, 955 F. Supp. 2d at 881 (quoting *River Park*, 703 N.E.2d at 893). Moreover, "the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *Id.*

Applying this test, and in particular, comparing the Plaintiffs' claims in the instant case with their fraud-related affirmative defenses and counterclaims as pled in the Guaranty Action, it is clear that the RICO claims arise out of the same group of operative facts. *See Amari Co., Inc.,* 955 F. Supp. 2d at 881 (citing *Carr v. Tillery*, 591 F.3d 909, 913–14 (7th Cir. 2010)) (finding identical claim despite new legal theory). As discussed, the alleged predicate acts in the instant case pertain to NSCB's alleged

17

improper declaration of Plaintiffs' default on the loan, improper determination that the loan was out of balance, unwarranted deduction of attorneys' fees from deposit accounts related to the loan, false notarizations, and claims of misconduct relating to the enforceability of the underlying note and guaranties. These acts mirror the fraudulent conduct that the Baeks alleged as affirmative defenses and counterclaims to the Guaranty claim. There, the Baeks asserted affirmative defenses, including fraud and contractual vagueness, related to NSCB's alleged misconduct through the structure and implementation of the loan and its modifications. They also asserted counterclaims for breach of contract seeking invalidation of the Guaranty, fraud claims about the loan and defaults, and false notarizations, as in the instant RICO claim. *See Amari,* 955 F. Supp. 2d at 881 (quoting *River Park*, 703 N.E.2d at 894) ("Perhaps the most telling indication of identity of cause of action in this case, however, is the parallels between the factual allegations of plaintiffs' state complaint and their federal complaint.").

"[T]his is no less true because the 'identical claim' would have been a defense or a counterclaim in state court, whereas it is an affirmative claim for relief in this action." *Amari,* 955 F. Supp. 2d at 881 (citations omitted). *Res judicata* "bars suits based on facts that would have constituted a counterclaim or defense in the earlier proceeding where successful prosecution of the later action would either nullify the earlier judgment or impair the rights established in the earlier action." *Kosydor v. Am. Express Centurion Servs. Corp.*, 979 N.E.2d 123, 128 (Ill. App. Ct. 5th Dist. 2012) (citation omitted); *see also Olague v. Vill. of Bensenville,* No. 96 C 6854, 1997 WL 337199, at *6 (N.D. Ill. June 13, 1997) (quoting *Henry,* 808 F.2d at 1234 ("[plaintiffs]

may not relitigate a defense, which was available but not raised in a prior action, by making it the basis of a claim in a subsequent action against the original plaintiff which if successful would nullify the initial judgment.")). Clearly, successful prosecution of Plaintiffs' RICO claim alleging fraud in the execution of and notarization of the loan documents, including the Guaranty, and manipulation of the loan agreement and its modification agreements would "either nullify the earlier judgment or impair the rights established in the earlier action" where the Circuit Court, in granting summary judgment for NSCB, found that the Baeks breached the Guaranty for the loan. Because the Parallel Action and the Guaranty Action bar Plaintiffs' claim under the doctrine of *res judicata*, the Court does not reach Defendants' claim that the foreclosure proceeding does the same.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' complaint, R. 13, is granted and the complaint is dismissed with prejudice.

ENTERED:

*Thomas M Durkin*

Thomas M. Durkin
United States District Judge

Dated: June 17, 2015

19